IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW AIMEE KEEL, | ) | |
|     Petitioner, | ) | Civil Action No. 14-122 Erie |
| | ) | |
|     v. | ) | Chief District Judge Joy Flowers Conti |
| | ) | Magistrate Judge Susan Paradise Baxter |
| SUPERINTENDENT COLEMAN, et al., | ) | |
|     Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Andrew Aimee Keel (the "petitioner") be denied and that a certificate of appealability be denied on all claims.

**II.    REPORT**

    **A.    Relevant Background**[1]

The petitioner's state criminal case involved a robbery, burglary and related crimes that occurred in the second-floor apartment at a home on Sassafras Street in Erie, Pennsylvania. Russell Mahon lived in the apartment. He testified at the petitioner's trial that on the night of July 13, 2007, he fell asleep in a reclining chair in his living room around 11:45 p.m. (5/19/08 Trial Tr. at 36). He was awoken by a man choking him. After a struggle, the intruder, who had a hatchet in his hand and threatened Mahon with it,

---

[1] The respondents submitted a hardcopy of the relevant documents that were filed on the docket of the Court of Common Pleas of Erie County. Those documents are indexed and numbered 1 through 54 and will be cited as "SCR ___ ." Also included among the records submitted by the respondents are the transcripts of the petitioner's trial and his sentencing. The transcript of the petitioner's May 29, 2012, hearing on his motion for post-conviction relief, which is incorrectly entitled "Suppression," is included among the records the respondents submitted as well.

1

guided Mahon around the apartment as he looked for money and items worth stealing. The ordeal lasted about 30 minutes. (Id. at 67). After the intruder exited the apartment with approximately $500.00 worth of items, Mahon called the police, who were dispatched to his home at 12:39 a.m. on July 14, 2007. (5/20/08 Trial Tr. at 6). Mahon reported that the intruder touched a vase, a serving platter and a telephone but did not take those items.

Mahon did not know the intruder. Although the intruder instructed that Mahon not look at him, Mahon testified at the petitioner's trial that he "kept trying to sneak peeks at him when he wasn't paying attention." (5/19/08 Trial Tr. at 40. See also id. at 44, 49-50). Mahon reported to the police that the intruder was a black male aged about 40, and that he was approximately 6 feet 2 inches tall with a slender but muscular build. (5/20/08 Trial Tr. at 7). He also said that the intruder was wearing silver sneakers that "were not tied with strings but … straps." (Id. at 82).

Adam DiGilarmo, a detective with the Erie Police identification unit, processed the vase and the platter from Mahon's apartment for fingerprints. (5/20/08 Trial Tr. at 26). He lifted three fingerprints from the vase and three from the platter. (Id. at 27-34). On July 23, 2007, Bryan Lechner submitted the fingerprint lifts to the Pennsylvania State Police for entry into the Automated Fingerprint Identification System ("AFIS") to see if a match could be made. (Id. at 24, 29, 42, 57). Corporal William D. Wagner with the Pennsylvania State Police, Erie Regional Crime Laboratory, received the fingerprint lifts. After the crimes at issue in this case occurred, the petitioner committed a robbery and burglary in the same neighborhood. On September 27, 2007, he was arrested for those crimes. This prompted the Erie police to contact Corporal Wagner on or around October 2, 2007, and ask him to compare the prints lifted from Mahon's items against the petitioner's known prints. (Id. at 97-99).

Corporal Wagner testified at the petitioner's trial as an expert in the field of fingerprint identification. He stated that one of the fingerprints lifted from the vase was from the petitioner's right

2

ring finger. (Id. at 52-58). He also stated that the other two prints lifted from the vase did not "contain enough information to identify them to anybody." (Id. at 58). Of the fingerprints Detective DiGilarmo collected from the platter, Corporal Wagner testified that only one was readable and it did not match the petitioner's known print. (Id. at 59). He entered the one readable fingerprint lifted from the platter into the AFIS and did not get a match. (Id.)

On October 17, 2007, Mahon went to the police station to review an eight-person photo lineup. He pointed to one individual and the officer told him that it was not "the guy we got the fingerprint on." (5/20/08 Trial Tr. at 76; see also 5/19/08 Trial Tr. at 63). Mahon testified at the petitioner's trial that he then immediately pointed to the petitioner's photograph and said "[w]ell, if that's not him, that one [the petitioner] definitely is." (5/19/08 Trial Tr. at 63. See also 5/20/08 Trial Tr. at 76). Mahon subsequently identified the petitioner out of an in-person lineup. He also made an in-court identification of the petitioner at trial. (Id. at 64).

The petitioner's two-day jury trial commenced on May 19, 2008. Gene Placidi, Esquire, represented him. The petitioner did not testify. Attorney Placidi called three defense witnesses. The first was the petitioner's wife, Edna Keel. She testified about the type of sneakers that the petitioner owned in order to try to distinguish him from the description that Mahon gave to the police. (5/20/08 Trial Tr. at 96).

The jury convicted the petitioner of numerous crimes, including burglary and robbery with a threat of serious bodily injury. On June 30, 2008, the trial court sentenced him to a term of incarceration of 6-12 years on the burglary count and a consecutive term of incarceration of 8 ½ to 17 years on the robbery count. The remaining charges merged with the burglary and robbery counts for the purposes of sentencing.

The petitioner missed the deadline to file a direct appeal, but the trial court later reinstated his right to file one *nunc pro tunc*. In November 2009, the petitioner, through new counsel William Hathaway, Esquire, filed a direct appeal with the Superior Court of Pennsylvania in which he raised the following two claims:

1. The trial court "abused its discretion and committed legal error in failing to grant [the defense's] Batson challenge whereupon the Commonwealth exercised a peremptory challenge on one of the two African-Americans in the jury panel without the provision of a legally sufficient race-neutral rationale for the exercise of the challenge"; and,

2. The trial court "committed legal error and abused its discretion in applying the deadly weapon enhancement to the robbery count[.]"

Commonwealth v. Keel, No. 1921 WDA 2009, slip op. at 3 (Pa.Super.Ct. May 25, 2010) ("Keel I") (quoting the petitioner's brief at 3).[2]

On May 25, 2010, the superior court issued a decision in which it denied both of the petitioner's claims on the merits and affirmed his judgment of sentence. Id. at 1-12. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on September 9, 2010.

The petitioner subsequently filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq*. (SCR 23). He claimed that Attorney Placidi provided him with ineffective assistance in violation of his Sixth Amendment rights for:

1. failing "to seek exculpatory evidence of the first laboratory analysis submitted by Bryan Lechner to Pennsylvania State Police Lab on July 23, 2007, to impeach the second latent fingerprint lifts submission to PSP by Detective Adam DiGilarmo on October 2, 2007";

2. failing to call his wife, Edna Keel, as an alibi witness;

3. failing to object to the introduction of evidence that allegedly was not disclosed to the defense in

---

[2] The petitioner filed Keel I as an attachment to his petition at ECF No. 2-1 at 1-12.

4

discovery;[3]

4. "coerc[ing] petitioner to waive his right to testify in his own defense, by telling petitioner that Edna L. Keel would testify to his whereabouts the day and time of the allege[d] offense"; and,

5. leading the witness during cross examination about the latent fingerprint lifts.

(SCR 23, PCRA motion at 3A-4A).[4]

The PCRA court appointed Eric Hackwelder, Esquire, to be the petitioner's counsel and directed him to file a supplemental PCRA motion. On April 13, 2012, Attorney Hackwelder filed the supplement. He explained that after a "thorough review of the record, including the trial transcripts," he concluded that the only claim he would advance was the one in which the petitioner contended that trial counsel was ineffective for not calling Edna Keel as an alibi witness. In Attorney Hackwelder's professional judgment, none of the other claims raised by the petitioner in his *pro se* motion established a colorable claim for PCRA relief. (SCR 31, PCRA motion supplement, ¶¶ 11-15).

The PCRA court held an evidentiary hearing on May 29, 2012. The hearing was limited to the one claim advanced by Attorney Hackwelder. The petitioner and his trial counsel, Attorney Placidi, testified. The petitioner did not present the testimony of Edna Keel. (See 5/29/12 Hr'g Tr.)

On June 5, 2012, the PCRA court issued a notice of intent to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 907. In this decision, the PCRA court reviewed each of the five claims of ineffective assistance that the petitioner raised in his *pro se* PCRA motion and determined that none of

---

[3] The PCRA court subsequently concluded that this claim had no merit because the documents submitted by the petitioner established that the prosecution provided to the defense its entire file, which included the latent fingerprint evidence from the vase and serving platter, the expert's written report, and a copy of the photo array. Commonwealth v. Keel, No. 3028 of 2007, slip op. at 11 (C.P. Erie June 5, 2012) ("Keel II") (SCR 33).

[4] The petitioner also argued that his prior counsel, Attorney Hathaway, was ineffective for failing to raise the claims of Attorney Placidi's ineffective assistance. Because Attorney Hathaway was successful in getting the petitioner's direct appeal rights reinstated *nunc pro tunc*, however, no claims of trial counsel's ineffective assistance could be pursued because under Pennsylvania law such claims must be raised in a PCRA proceeding, not on direct appeal. Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002).

5

them had merit. Keel II, No. 3028 of 2007, slip op. at 8-19. The PCRA court formally dismissed the petitioner's claims later that same month. (SCR 34).

Attorney Hackwelder filed a notice of appeal and the required statement of matters complained of on appeal in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Counsel raised only one claim on appeal: that the PCRA erred in denying the petitioner's claim that his trial counsel was ineffective for failing to call Edna Keel as an alibi witness. (SCR 40).

In the meantime, the petitioner submitted documents to the PCRA court and the superior court stating that he wanted to proceed *pro se* and file an amended Rule 1925(b) statement in order to challenge the PCRA court's decision to deny some of the other claims he raised in his *pro se* PCRA motion. On November 20, 2012, the PCRA conducted a hearing in accordance with Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998) and on that same day it issued an order permitting the petitioner to proceed *pro se* on appeal. (SCR 46).

The petitioner filed a request to amend his Rule 1925(b) statement but the superior court denied that request in a *per curiam* order. (SCR 47). He also filed with the superior court a motion to stay his appeal and to remand his case to the PCRA court and compel it to forward to him a copy of certain transcripts, including the transcript of the May 29, 2012, PCRA evidentiary hearing. Commonwealth v. Keel, No. 1326 WDA 2012, slip op. at 3 (Pa.Super.Ct. Aug. 22, 2013) ("Keel III").[5] On April 2, 2013, the superior court denied that motion in a *per curiam* order in which it instructed that the petitioner "may argue the lack of a complete record and/or failure to provide [him] with a complete record, along

---

[5] The petitioner filed Keel III as an attachment to his petition at ECF No. 2-1 at 17-27.

with all other issues that [he] desires to raise on appeal, in [his appeal] brief." See docket entry in Commonwealth v. Keel, No. 1326 WDA 2012 (Pa.Super.Ct. May 5, 2013).[6]

The petitioner subsequently filed his brief with the superior court in which he argued, *inter alia*, that the PCRA court erred in denying the claims he raised in his *pro se* PCRA motion. He also argued that the PCRA court abused its discretion "in failing to reproduce records to [the petitioner] during the conclusion of the Grazier hearing to perfect and/or file a meaningful appeal as [the petitioner] attempts to exhaust his appellate rights[.]" Keel III, No. 1326 WDA 2012, slip op. at 5-6 (citing the petitioner's brief at 4-5).

On August 22, 2013, the superior court issued an opinion and order in which it affirmed the PCRA court's decision to deny the petitioner relief. Keel III, No. 1328 WDA 2012, slip op. at 1-11. It held that all issues except for the one raised by Attorney Hackwelder were waived because they were not contained in the Rule 1925(b) statement. Id. at 9 (citing Commonwealth v. Butler, 812 A.2d 631, 633-34 (Pa. 2002) and Commonwealth v. Lord, 719 A.2d 306 (1998) ("any issues not raised in a Rule 1925(b) statement are waived.")). As for the claim that was raised by Attorney Hackwelder, the superior court held that it was waived because the petitioner "has not provided us with the notes testimony from the PCRA hearing, which would allow us to review his ineffective assistance of counsel claim meaningfully." Id. at 9, 10-11 (citing Commonwealth v. Steward, 775 A.2d 819, 835 (Pa.Super.Ct. 2001) and Commonwealth v. Murchinson, 899 A.2d 1159, 1162 (Pa.Super.Ct. 2006)).

After the Supreme Court of Pennsylvania denied a petition for allowance of appeal, the petitioner filed with this court the pending petition for a writ of habeas corpus [ECF No. 2] pursuant to 28 U.S.C. § 2254. Under this statute, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court

---

[6] The superior court's docket sheet is available online at https://ujsportal.pacourts.us and this court may take judicial notice of it.

7

shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. Id. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The petitioner raised four grounds for relief in his petition. He claimed that Attorney Placidi provided him with ineffective assistance in violation of his Sixth Amendment rights for:

– failing "to advocate and advance alibi witness issue under the due process and equal protection of the law." (**Claim One** of the petition , ECF No. 2 at 5).[7]

– failing to "seek exculpatory evidence that would have change[d] the outcome of the jury verdict." (**Claim Two** of the petition, ECF No. 2 at 7).

– failing "to file Notice of Alibi Witness Defense. Trial counsel was made aware that alibi witness was willing and available [to testify] of petitioner's whereabout[s] [on the] date and time of the alleged crime." (**Claim Three** of the petition, ECF No. 2 at 8).

– failing "to seek [a] suppression hearing of the tain[t]ed evidence that was presented to the court out of the control and custody of the Commonwealth. Specifically, the vase, silver serving plat[t]er, phone head set, and the photo lineup array." (**Claim Four** of the petition, ECF No. 2 at 10).

The respondents filed an answer in which they contended that the petitioner's claims are procedurally defaulted and, in the alternative, have no merit. [ECF No. 7]. The petitioner filed a reply. [ECF No. 18].[8]

---

[7] Although the petitioner contends in Claim One that his trial counsel's failure to call Edna Keel as an alibi witness also violated the Due Process Clause and the Equal Protection Clause, the applicable constitutional provision is the Sixth Amendment's right to effective assistance counsel.

[8] The petitioner submitted his petition on the standard form for § 2254 petitions and listed the four grounds for relief set forth herein. The standard form contains the following warning to habeas applicants: "if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date." [ECF No. 2 at 5 (emphasis in original)]. The only claims before the Court are the four claims that the petitioner raised in the petition. Rule 2 of the Rules Governing Section 2254 Cases In the United States District Courts requires that: "The *petition must*: (1) Specify *all* the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground[.]" (emphasis added). See also Local Rule 2254.B.2.b.

After the respondents filed their answer in this case, the petitioner filed a reply [ECF No. 18], a document that he called an "amended" petition [ECF No. 19] and a document that he called a "supplemental" petition [ECF No. 20]. In those
*Continued on next page…*

**B. Discussion**

The petitioner carries the burden of proving he is entitled to the writ of habeas corpus. See, e.g., Cullen v. Pinholster, — U.S. — , 131 S.Ct. 1388, 1398 (2011). Habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended § 2254. AEDPA imposed a new standard of review that applies to a federal habeas court's review of a claim the state court denied on the merits. That standard of review is codified at 28 U.S.C. § 2254(d) and it provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted *with respect to any claim that was adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. See, e.g., Harrington, 562 U.S. at 99-100; Robinson v.

---

documents, the petitioner raised additional grounds for relief. A petitioner cannot raise new habeas claims in a reply (formerly known as a Traverse) or in other subsequent filings. Fed. R. Governing § 2254 Cases 2; Local Rule 2254.B.2.b. See also Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."). In addition, Rule 15 of the Federal Rules of Civil Procedure applies to habeas cases and the petitioner did not receive the required consent from the respondents or the court's leave to file an amendment to his petition. Fed. R. Civ. P. 15(a)(2).

9

Beard, 762 F.3d 316, 324 (3d Cir. 2014). In the event that the federal habeas court is reviewing the merits of a claim that the state court did not "adjudicate[ ] on the merits," AEDPA's standard of review at § 2254(d) does not apply and the federal habeas court's review of the claim is *de novo*. See, e.g., Cone v. Bell, 556 U.S. 449, 472 (2009); Thomas v. Horn, 570 F.3d 105, 124 (3d Cir. 2009).

Importantly, in all cases and regardless of whether AEDPA's standard of review at § 2254(d) applies, the state court's *factual determinations are presumed to be correct* unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

In the petition, the petitioner maintained that each of the claims he raised were claims that he also raised in his PCRA proceeding. Because the superior court dismissed all of the petitioner's PCRA claims as waived, the respondents argued in their answer that he procedurally defaulted those claims for the purposes of federal habeas review. This court need not resolve the complex issue of procedural default as it applies to the circumstances of this case, in which the superior court denied the petitioner's requests to file an amended Rule 1925(b) statement and for a remand in order to obtain the transcript of his PCRA hearing. Because the petitioner's claims can be more efficiently disposed of on the merits, the court should deny each of them for that reason without regard to whether they are procedurally defaulted.

Evaluating the petitioner's claims in this manner calls for the straightforward application of the test for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail under Strickland, the petitioner has the burden of proving that his trial counsel's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). See also Harrington, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689).

Strickland also requires that the petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial or direct appeal "would have been different." Strickland, 466 U.S. at 694. See also Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) ("it is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial. The likelihood of a different result must be substantial, not just conceivable.") (internal quotations and citations omitted).

The Supreme Court in Strickland noted that although it discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for an analysis of the claim to proceed in that order. 466 U.S. at 697. Consequently, if it is more efficient to dispose of an ineffectiveness claim on the ground that the petitioner failed to meet his burden of showing prejudice, this course should be followed. Id.

### 1. Claims One and Three: The Decision Not to Call Edna Keel As an Alibi Witness

In Claim One, the petitioner contended that his counsel was ineffective for failing to "investigate" and "advance" Edna Keel as an alibi witness. [ECF No. 2 at 5]. In Claim Three, he similarly contended that his trial counsel "was made aware that" Edna Keel "was willing and available" to testify as to his "whereabout[s] [on the] date and time of the alleged crime[,]" and that counsel was ineffective for "failing to file [a] notice of alibi witness defense." [ECF No. 2 at 8].

At the PCRA hearing, Attorney Placidi testified that he did not call Edna Keel as an alibi witness because, after he interviewed her, he learned that she could place the petitioner at his home *only during the day and early evening hours of July 13, 2007, and not at the time the crimes at Mahon's apartment were committed*. (5/29/12 Hr'g Tr. at 5-6). The petitioner did not call Edna Keel to refute Attorney Placidi's testimony. The petitioner testified at the hearing and he insisted that he was at home during the relevant time period. (Id. at 8-9).

The PCRA court credited Attorney Placidi's testimony and not the petitioner's. Keel II, No. 3028 of 2007, slip op. at 18-19. This court must presume the PCRA court's credibility determination was correct and defer to it under § 2254(e)(1). As the United States Court of Appeals for the Fourth Circuit explained:

> for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear. See id. § 2254(e)(1) (protecting state courts' factual judgments unless disproved in federal court by "clear and convincing evidence"). Indeed, "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008). See also Nara, 488 F.3d at 201 ("Face to face with the living witnesses, the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases, the exercise of his power of observation often proves the most

12

accurate method of ascertaining the truth … how can we say he is wrong? We never saw the witnesses."). Because the petitioner failed to produce any credible evidence to support his claim that Edna Keel could have provided him with an alibi defense, Claims One and Three have no merit.

In his *pro se* PCRA motion, the petitioner also made the related claim that Attorney Placidi was ineffective for coercing him into waiving his right to testify by telling him that he would call Edna Keel as an alibi witness. To the extent that the petitioner raised that same claim in his habeas petition, it also fails for lack of merit since the PCRA court credited Attorney Placidi's testimony that he had determined that Edna Keel could not provide the petitioner with an alibi defense. Morever, this claim is belied by the record, which demonstrates that the petitioner waived his right to testify because he had *crimen falsi* convictions that would be admitted into evidence if he testified. (5/20/08 Trial Tr. at 63-68). During the trial court's colloquy of him, the petitioner stated that the decision not to testify was his, that his lawyer did not promise him anything in exchange for the decision, and that his decision was knowing and voluntary on his part. (Id. at 68).

In conclusion, the petitioner failed to meet his burden of demonstrating that Attorney Placidi's decision not to call Edna Keel as an alibi witness "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. He also failed to demonstrate that he was prejudiced by counsel's challenged decision. Id. at 694. Therefore, Claim One and Claim Three should be denied.

### 2. Claim Two: Failure to Investigate Exculpatory Fingerprint Evidence

In Claim Two, the petitioner contended that Attorney Placidi was ineffective for failing "to seek exculpatory evidence that would have change[d] the outcome of the jury verdict." [ECF No. 2 at 7]. According to the petitioner, the allegedly "exculpatory evidence" is the fact that Corporal Wagner did not issue a report after Bryan Lechner submitted the fingerprint lifts on July 23, 2007, and only issued

13

one after the Erie police contacted him again on or around October 2, 2007. Claim Two fails because the record reveals that Attorney Placidi had a reasonably strategic reason for not utilizing that information in an attempt to impeach Corporal Wagner's testimony or the fingerprint evidence.

At the trial, the court and counsel had a discussion on the record regarding the reason Corporal Wagner did not issue his report until October 30, 2007. (5/20/08 Trial Tr. at 97-98). A review of the transcript establishes that Attorney Placidi made the tactical decision not to exploit the delay in Corporal Wagner issuing his report because if he did, the prosecution would be permitted to explain to the jury that the petitioner had committed another robbery and burglary in Mahon's neighborhood and that is what prompted the investigators to contact Corporal Wagner and ask him to compare the fingerprints collected from Mahon's items with the petitioner's known prints. (Id. at 98-99). Attorney Placidi's decision is precisely the type that the Supreme Court in Strickland held to be protected from second-guessing. 466 U.S. at 690-01.

In his PCRA proceeding, the petitioner also contended that Attorney Placidi should have made an effort to find the individual whose print matched the readable print lifted from the serving platter. To the extent that the petitioner raised that same claim in his petition, it also is unavailing. As the respondents point out in their answer, that another individual's fingerprint was found on the platter does not negate the presence of the petitioner at the scene of the crime *since his fingerprint was found on the vase*. The petitioner did not know Mahon and he provided no reason to explain why his fingerprint was on an item in Mahon's apartment.

Based upon all of the foregoing, Claim Two should be denied. The petitioner did not meet his burden of establishing that his counsel's challenged conduct in Claim Two "fell below an objective standard of reasonableness[,]" Strickland, 466 U.S. at 688, or "that there is a reasonable probability that, but for" counsel's alleged errors the result of his trial "would have been different." 466 U.S. at 694.

### 3. Claim Four: Failure to Seek Suppression Of Tainted Evidence

In Claim Four, the petitioner contended that Attorney Placidi was ineffective for failing to file a motion to suppress evidence from the vase, serving platter, telephone and the photo lineup. Because no incriminating evidence was obtained from the platter or the telephone, the petitioner failed to demonstrate that he was prejudiced by counsel's failure to suppress that evidence. As for the incriminating evidence that was obtained from the vase and the photo lineup, the petitioner failed to advance any potentially meritorious grounds that counsel could have raised to support the suppression of that evidence. Therefore, the petitioner did not demonstrate that the defense would have been successful in suppressing that evidence had Attorney Placidi moved to preclude the introduction of it.

Based upon all of the foregoing, the petitioner failed to meet his burden of establishing "that there is a reasonable probability that, but for" Attorney Placidi's challenged conduct in Claim Four, the result of his trial "would have been different." <u>Strickland</u>, 466 U.S. at 694. Therefore, Claim Four has no merit and should be denied.

### 4. Additional Claims Of Ineffective Assistance Of Counsel

Throughout his petition, the petitioner argued that his direct appeal counsel and his PCRA counsel provided him with ineffective assistance for failing to litigate the claims of trial counsel ineffectiveness at issue in this case. Under Pennsylvania law ineffective assistance of counsel claims must be raised in a PCRA proceeding, not on direct appeal. <u>Grant</u>, 813 A.2d at 738. Therefore, the petitioner's contention that direct appeal counsel should have raised claims of trial counsel's ineffective assistance has no merit. As for his claim that his PCRA counsel was ineffective, that claim must be denied because it is not cognizable. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in

a proceeding under section 2254."). See also Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (there is no federal constitutional right to counsel during state post-conviction proceedings).

### D. Certificate of Appealability

28 U.S.C. § 2253 governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." When the district court rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether the petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this order to file objections to this report and recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: June 15, 2016 /s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc: The Honorable Joy Flowers Conti
Chief United States District Judge

Notice to counsel of record by ECF and by U.S. Mail to the petitioner at his address of record